# SULLIVAN & CROMWELL LLP

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588
WWW.SULLCROM.COM

*125 Broad Street*
*New York, NY 10004-2498*

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.
FRANKFURT • LONDON • PARIS
BEIJING • HONG KONG • TOKYO
MELBOURNE • SYDNEY

December 15, 2011

By Hand and ECF Filing

The Honorable J. Frederick Motz,
   United States District Court for the District of Utah,
     Frank E. Moss United States Courthouse,
       350 S. Main Street,
         Salt Lake City, Utah 84101.

        Re:   <u>Novell, Inc. v. Microsoft Corp.</u>

Your Honor:

        Yesterday, the jury sent several notes relating to the issue of "middleware." These notes appear to reflect significant confusion on the part of the jury about what "middleware" means in the context of this case. One note was so confused that it asked: "Was Win 95 considered an operating system or middleware?"

        This confusion stems from the fact that the jury was not instructed about the appropriate definition of "middleware" to be used in assessing Novell's claim. As a result, Microsoft reiterates its request that the Court instruct the jury about what Novell must show to prove that WordPerfect combined with PerfectFit, AppWare and OpenDoc was "middleware" that posed a credible threat to Microsoft's monopoly in the PC operating system market—which is how Novell's counsel has described "our theory of the case." (Dec 7, 2011 Trial Tr. at 4867:10-4868:1.) Such an instruction is especially appropriate because the definition of "middleware" contained in the Findings of Fact for which Novell sought and obtained collateral estoppel effect is the very same definition Novell incorporated in its Complaint.

The Honorable J. Frederick Motz                                                                                                              -2-

       Microsoft has explicitly requested that the Court instruct the jury about the meaning of "middleware" in this case. On page 12 of Microsoft's Revised Proposed Final Jury Instructions, filed on December 5, 2011, Microsoft requested that the Court instruct the jury as follows:

> Second, Novell contends that PerfectOffice, WordPerfect and Quattro Pro, including technologies called AppWare and OpenDoc, represented a form of "middleware" that threatened the applications barrier to entry that protected Microsoft's monopoly in the market for PC operating systems. For this purpose, middleware is a software product that (a) runs on multiple operating systems, (b) is available on all or substantially all personal computers, and (c) exposes a sufficient number of APIs to allow independent software vendors (ISVs) profitably to develop general-purpose personal productivity applications that call upon APIs exposed by the software product, rather than on APIs exposed by the underlying operating system (such as Windows 95).

       That definition of "middleware" is not something Microsoft invented. Rather, it is the definition of "middleware" used in the Government Case. The definition comes directly from Findings of Fact that are binding in this case. Finding of Fact 28 states that "[c]urrently [as of November 1999] no middleware product exposes enough APIs to allow independent software vendors ('ISVs') profitably to write full-featured personal productivity applications that rely solely on those APIs." Finding of Fact 32 states that it still "remains to be seen whether server- or middleware-based development will flourish at all. Even if such development were already flourishing, it would still be several years before the applications barrier eroded enough to clear the way for the relatively rapid emergence of a viable alternative to incumbent Intel-compatible PC operating systems." Finding of Fact 77 states that although Netscape Navigator and Sun's Java technology were both "middleware technologies" in 1999, they had "a long way to go before they might imperil the applications barrier to entry."

       There is no way to read these three Findings of Fact and conclude anything other than that in order for a software product to be "middleware" for purposes

The Honorable J. Frederick Motz                                                            -3-

of Novell's claim, *i.e.*, "middleware" of significance to competition in the PC operating system market, it must be cross-platform in the sense that it runs on multiple PC operating systems and must expose a sufficiently broad set of APIs to enable ISVs to write full-featured personal productivity applications that call those APIs as opposed to APIs exposed by underlying operating systems. Only such "middleware" has any prospect of eroding the applications barrier to entry, which is what Novell must prove in order to prevail on its illegal monopoly maintenance claim.

In paragraphs 44 and 48 of the Complaint, Novell expressly adopted the definition of "middleware" used in the Government Case:

> 44. As the U.S. Court of Appeals for the District of Columbia Circuit held in affirming the district court's essential findings, Microsoft's Windows monopoly was threatened by "middleware" such as Netscape's Navigator, which is a browser application, and Sun Microsystems' implementation of the "Java" technologies, both of which *were not only able to function on multiple operating systems, but were potentially able to provide platforms for end-use applications, which made them a threat to replace Windows itself as such a platform.* Once written to Navigator and/or Java, end-use applications could function on any operating systems on which Navigator or Java functioned, thereby "erod[ing] the applications barrier to entry." 253 F.3d at 55. Microsoft engaged in anticompetitive conduct designed to exclude such middleware from installation on PCs using the dominant Windows operating system, on which any middleware would depend for survival until sufficient competing operating systems could emerge. Microsoft thereby violated Section 2 of the Sherman Act "by preventing the effective distribution and use of products that might threaten [its] monopoly." *Id.* at 58.

> 48. The District Court defined middleware as software that "relies on the interfaces provided by the underlying operating system while simultaneously exposing its own APIs to developers." Findings of Fact ¶ 28. *In the Government Suit, Netscape, when coupled with Java, is described as having "the potential" to become a middleware platform on which applications could be written to run on multiple operating systems. Such cross-platform*

The Honorable J. Frederick Motz -4-

> *functionality undermines the applications barrier to entry that helps protect Microsoft's operating system dominance.*

(Compl. ¶¶ 44, 48 (emphasis added).) If there were any doubt on this score, it is eliminated by the following statement in Novell's opening brief to the Fourth Circuit on the appeal from this Court's decision denying Microsoft's motion for summary judgment.

> "'Middleware' is a term used to refer to software products that have the capability to serve as platforms for software applications themselves. They expose, or make available, their own APIs, and theoretically, software developers could rely upon these APIs rather than Windows's APIs . . . ." *Novell*, 505 F.3d at 308 n.14 (citations omitted).

(Novell 4th Circuit Brief, filed Aug. 6, 2010 at 16 n.5.) Having adopted the definition of "middleware" from the Government Case, Novell cannot now adopt an entirely different definition that requires only that a piece of software sit between an operating system and applications. Even Novell's technical expert agreed that "there's got to be more than just the exposure of API's" to make a software product "middleware." (Nov. 9, 2011 Trial Tr. at 1461:22-1462:4.)

During oral argument on the jury instructions on December 7, 2011, Microsoft repeated its request that the Court instruct the jury about the meaning of "middleware" in this case.

> I do not agree with the notion that the jury can be told that middleware is anything that literally sits in the middle, which I think is what Novell is suggesting. The findings of fact that Professor Murphy went through on the stand today could not be more clear. Novell asked that they have a binding effect. The Court granted that request. . . . I think it's patently obvious if you look at [findings of fact] 28, 32, 39 and other findings of fact to which the Court has given collateral estoppel effect that middleware has to be a lot more than any random layer of software that exposes a few APIs.

(Dec. 7, 2011 Trial Tr. at 4857:4-4858:7.)

The Honorable J. Frederick Motz                                                                    -5-

In response to the Court's question, "[w]hy should I weigh in on this in the instructions?," Microsoft predicted exactly the sort of confusion reflected in the notes sent by the jury yesterday.

> Because, Your Honor, the jury needs to understand that we're not just having a debate about some terminology in the ether. . . . [T]he only way that Novell can show under the cross-platform middleware theory that the delay in the release of PerfectOffice had any impact on competition in the PC operating system market is to show not only that if it had the product come out earlier it would have been substantially more popular, but that the product itself had some capability of functioning as a middleware platform. And this is not a concept that most lay people understand.

(Dec. 7, 2011 Trial Tr. at 4858:8-21.)

Microsoft's counsel also explained why Novell should not be allowed to adopt a definition of "middleware" at odds with the definition that lies at the core of the Government Case.

> It is the theory of the government case that Novell brought this case predicated on, and they shouldn't be allowed to walk away from it now. The theory of the government case was [that] a piece of middleware [had to] be cross-platform[,] ubiquitous in the sense that it was available on all or almost all PCs[,] and it had [to have a] realistic capability of functioning as an alternative to Windows as a platform for developing application software. If it doesn't have those characteristics, then it can't have any impact. By definition, it can't have any impact on competition in the PC operating system market.

(Dec. 7, 2011 Trial Tr. at 4858:22-4859:7.)

Moreover, if Novell was not relying on the cross-platform "middleware" theory used in the Government Case, then its sole remaining claim is not substantially related to the claims asserted in the Government Case and is barred by the four-year statute of limitations in Section 4 of the Clayton Act. As the Fourth Circuit held in *Novell, Inc.* v. *Microsoft Corp.*, 505 F.3d 302, 321-23 (4th Cir. 2007), the tolling provision in Section 5(i) of the Clayton Act should not be construed "to permit private

The Honorable J. Frederick Motz                                                                      -6-

plaintiffs to 'sit on their rights' and to assert, years after the traditional statute of limitations has run, 'claims so much broader than those asserted by the government that they open entirely new vistas of litigation.'"

Absent a clear definition of "middleware," the jury is at sea in trying to assess whether WordPerfect—either alone or in combination with PerfectFit, AppWare and OpenDoc—had any ability to affect competition in the PC operating system market. Novell has only exacerbated that situation by suggesting that the broad definition of "middleware" in the MICROSOFT COMPUTER DICTIONARY should trump the definition of middleware used in the Government Case and incorporated in Novell's own Complaint. This is not an issue of fact for the jury. The definition of "middleware" that governs Novell's claim under Section 2 of the Sherman Act is an issue of law as to which the Court is obligated to instruct the jury.

As a result, Microsoft once again requests that the Court provide the jury with the definition of "middleware" that was used in the Government Case and adopted by Novell in its Complaint in this case.

Respectfully,

David B. Tulchin

cc:   Jeffrey M. Johnson, Esq.